Gerald Singleton (SBN 208783)
Brody A. McBride (SBN 270852)
Trenton G. Lamere (SBN 272760)
SINGLETON SCHREIBER
McKENZIE & SCOTT, LLP
450 A Street, 5th Floor
San Diego, California 92101
P: (619) 697-1330
F: (619) 697-1329
gsingleton@ssmsjustice.com
bmcbride@ssmsjustice.com
tlamere@ssmsjustice.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.C.A. (by and through his guardian, Amanda Purvis), individually, and as a successor in interest to his father, Mark Armendo, deceased; PATRICE CLINES, individually,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO and DOES 1-50,<br><br>Defendants. | Case No. 3:20-cv-2504-W-BLM<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

## I.

## INTRODUCTION

1. Plaintiffs K.C.A. and Patrice Clines ("Ms. Clines") sue the County of San Diego ("County") and Does 1-50 for wrongful-death and other damages arising from the death of K.C.A.'s father and Ms. Clines son, Mark Armendo ("Mark"), a prisoner who was in the custody of the County.

## II.

## JURISDICTION, VENUE, AND ADMINISTRATIVE EXHAUSTION

2. This Court assumed jurisdiction of this case pursuant to 28 U.S.C. §§ 1441 and 1367.

3. Plaintiffs haves complied with all California Government Code requirements for asserting causes of action against the public-entity and public-official defendants named herein.

### III.

### PARTIES

4. K.C.A. is and was, at all times relevant to this complaint, an individual domiciled in Ohio. K.C.A. is Mark's only surviving child. K.C.A. is a minor suing by a through his mother and guardian, Amanda Purvis, who is not a party to this action. In addition to suing individually, K.C.A. also sues as Mark's successor in interest to prosecute those claims which survived Mark's death. *See* Cal. Civ. Proc. Code § 377.30.

5. Ms. Clines is and was, at all times relevant to this complaint, an individual domiciled in California. Ms. Clines was Mark's mother, and she is suing individually.

6. The County is and was, at all times relevant to this complaint, a municipal entity duly organized under California law. The San Diego County Sheriff's Department ("Department") is the chief law enforcement agency for the County. The Department manages and operates the Vista Detention Facility ("Vista Jail") and was, at all times relevant to this complaint, responsible for the policies, procedures, practices, and customs of the Vista Jail, as well as for the hiring, training, supervision, discipline, actions, and inactions of the County's agents and/or employees working in the Vista Jail.

7. The true names and capacities of defendants Does 1 through 50 are currently unknown to Plaintiffs who, therefore, sues these defendants under these fictitious names. These defendants are each directly and/or vicariously responsible, in some manner, for the harms alleged herein. When Plaintiff learns these defendants' true names and capacities, Plaintiff will seek leave to amend this pleading accordingly.

8. "Defendants" refers collectively to all defendants, including Does 1 through 50.

9. At all times relevant to this pleading, Defendants, and/or each of them, were the agents, servants, employees, partners, aiders and abettors, co-conspirators, and/or joint

venturers of each of the other Defendants; and were operating within the purpose and scope of said agency, service, employment, partnership, enterprise, conspiracy, and/or joint venture; and each defendant has ratified and approved the acts of each of the remaining defendants. Defendants each aided and abetted, encouraged, and/or rendered substantial assistance to the other Defendants in breaching their obligations and duties to Plaintiffs, as alleged herein. In taking action to aid and abet and/or substantially assist the commission of these wrongful acts and other wrongdoings alleged herein, each of Defendants acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and/or wrongdoing.

10. At all times relevant to this pleading, each individual defendant acted under color of state law.

## IV.

## FACTS

**A. Jail Staff's Deliberate Indifference to Mark's Serious and Obvious Medical Conditions, Risks, and Needs**

11. In June 2020, Mark Armendo was a prisoner in the County's custody at the Vista Jail.

12. In or around the end of June 2020, Mark began experiencing serious and obvious medical conditions requiring immediate care, including respiratory distress substantially caused by a disease believed (based on current information) to be COVID-19.

13. Does 1-50 (who are currently unknown jail officials) were subjectively aware of, and on constructive notice of, Mark's serious and obvious medical conditions, risks, and needs. These defendants nonetheless failed to summon and provide medical care necessary to treat Mark's serious and obvious medical conditions, risks, and needs and/or summoned and provided medical care so deficient that it was tantamount to no medical care at all.

14. As a result of these defendants' negligent, reckless, and/or deliberately indifferent actions and omissions, Mark stopped breathing, and he was down in his jail cell for a significant period of time when discovered by jail staff. Mark was taken to a hospital on or about June 29, 2020, where he tested positive for COVID-19. The County released him from custody on or about July 7, 2020. Because he had been allowed to decompensate so severely, Mark suffered from severe pneumonia and seizures. He died on August 21, 2020, and Plaintiffs are informed and believe Mark's death was substantially caused by COVID-19.

**B.   County's Deliberate Indifference to Serious and Obvious Medical Conditions, Risks, and Needs**

15. Leading up to and throughout June 2020, County policymakers, including San Diego County Sherriff, William Gore, and jail staff were on actual and constructive notice that COVID-19 poses serious medical risks and needs to inmates, jail staff, and the public at large (whose resources could be overburdened by inmates haphazardly allowed to contract and become severely ill from COVID-19).

16. Plaintiffs are informed and believe that, despite their subjective awareness of the serious medical risks and needs posed by COVID-19, particularly in a jail setting, Defendants failed to implement the safeguards and protocols needed to mitigate these serious medical risks and needs leading up to June 2020, including failing to:

   a. Implement widespread testing to determine which staff and inmates were sick and/or contagious;
   b. Ensure sufficient stocks of hygiene supplies, cleaning supplies, personal protective equipment, and medical supplies were available;
   c. Implement consistent cleaning and sanitization procedures;
   d. Implement consistent adequate quarantine and/or medical isolation procedures for inmates who have been exposed to and/or tested positive for COVID-19;
   e. Ensure adequate social distancing measures were possible and enforced;

     f. Refuse to book individuals for low-level, non-violent offenses;

     g. Summon/provide medical care capable of addressing COVID-19 and/or transfer inmates to facilities equipped to do so; and

     h. Consistently enforce the above strategies and others outlined by the U.S. Center for Disease Control and Prevention for correctional and detention facilities.

17. As the San Diego Union Tribune reported on March 28, 2020, "[m]edical experts working in San Diego County jails [we]re growing increasingly worried about the danger posed by the coronavirus because officials ha[d] tested only a few dozen people and more inmates [we]re showing signs of infection." That is, inmates were presenting symptoms but were never tested.

18. As the San Diego Union Tribune reported on April 3, 2020, "Four San Diego County Sheriff's Department employees ha[d] tested positive for COVID-19, along with the first county jail inmate."

19. As the San Diego Union Tribune reported on April 15, 2020, "Three San Diego County jail inmates were moved to what's commonly called 'the hole' after providing the San Diego Union Tribune a photograph of the men pleading for better conditions inside county jails." The image showed a group of inmates hoisting a sheet painted with the message "We Don't Deserve To Die."

20. As the San Diego Union Tribune reported on April 26, 2020, inmates were, at that time, "terrified" of conditions in County jails. County jail officials were "relying on inmates to protect themselves from . . . COVID-19." Inmates were doing the best they could with the "scant supplies they got from deputies, but there [were] not enough." Inmates could not "keep the recommended distance from other inmates," and "[t]he cells [we]re 'triple-bunked' and the beds are just two feet apart." Not enough showers were working, and inmates were not being given enough soap. Multiple inmates were being isolated without regard for their existing medical conditions, leaving one inmate in need of serious cardiac care, for example, isolated in a cell. Inmates were being allowed one

pair of socks and underwear per week and being deprived of razors and nail clippers. Each inmate was given a single mask but no means to effectively wash their masks. Maintaining physical-distance requirements of six feet was impossible. Inmates were not being given enough cleaning supplies to disinfect their common spaces and cells.

21. On May 17, 2020, the San Diego Union Tribune reported, "Despite pandemic, sheriff continues booking suspects on minor, nonviolent offenses." Indeed, "amid calls for the department to reduce its jail population, hundreds of people were booked into jail for nonviolent, low-level offenses." Each of these instances "potentially exposed [the arrestee], the officers who arrested him, jail staff and other inmates to the novel coronavirus, which has posed a significant public health risk to congregate living facilities like jails and prisons." As it is, "[p]ublic health officials have warned for weeks that congregate living — clustered housing situations like those inside detention centers and senior homes — promotes the spread of the virus and threatens residents and staff."

22. On May 17, 2020, the San Diego Union Tribune also reported that, by that point, "Sheriff Bill Gore ha[d] tested fewer than 150 inmates," releasing only four who had tested positive.

23. On May 17, 2020, the San Diego Union Tribune also reported, "jails are unsanitary," and "deputies do not always follow rules about wearing protective gear and they worry about the constant churn of people through the jails." "There [we]re guys coming in and out all time."

24. The County has a long history of deliberate indifference to the serious medical needs and risks of inmates in the County's custody. The National Commission on Correctional Health Care ("NCCHC"), for example, sets standards for health services in correctional facilities, operates an accreditation program for institutions that meet those standards, produces resource publications, conducts educational conferences, and offers certification to correctional health professionals.

25. In January 2017, the NCCHC provided a report to the Sheriff's Department after reviewing the practices of County jails. Of the thirty-eight "essential standards"—

all of which must be met in order to attain accreditation—County jails failed to meet twenty-six standards.

26.     Among other things, the NCCHC found that jail staff failed to review inmates' deaths in a timely manner, healthcare providers were not being informed of any results of death reviews, and there was no formal peer-review process for contract medical providers or for nurses. NCCHC found the inmate grievances were hard to track, and it was difficult to count and sort the number of medical grievances. NCCHC found there was no central log to track correctional officers' training requirements on health-related matters.

27.     According to NCCHC, a standard on chronic disease services is required to ensure that an inmate/patient suffering from one of nine chronic conditions is identified and enrolled in a chronic disease program based on national clinical protocols. The County medical providers interviewed by NCCHC stated they were unaware of *any* chronic disease protocols.

28.     NCCHC recommended a responsible physician oversee the development of protocols for all nine chronic diseases identified in the standard. NCCHC recommended a new policy and procedure be implemented, and a new form be used, for providers to better document chronic diseases. NCCHC advised that a central list of chronic-disease patients be available to ensure everyone is treated according to their disease status. NCCHC recommended sufficient and suitable space, supplies, and equipment be available for the Department's medical, dental, and mental-health services.

29.     Defendants knew of and failed to implement all of the foregoing recommendations, thus substantially contributing to Mark's death.

30.     In addition to the County's failure to fully implement the NCCHS's recommendations, Defendants were also, leading up to Mark's death, aware of multiple examples of jail staff failing to coordinate and share inmates' critical medical information among jail staff, resulting in preventable inmate deaths. The 2015/2016 San Diego County Grand Jury ("Grand Jury"), for example, took issue with the Jail Information Management System ("JIMS"), a database used for maintaining inmate records. Jail Staff reported

having trouble sorting and retrieving information from the old software.

31. Defendants were also aware of multiple examples of failing to conduct proper cell checks, resulting in preventable inmate deaths.

32. Defendants were also aware of multiple examples of failing to investigate misconduct, failing to take appropriate remedial action, and covering up wrongdoing, resulting in preventable inmate deaths.

33. Despite being on notice of the foregoing *de facto* policies and practices, and deficiencies in the training and supervision of County jail staff, Defendants failed to take action that would halt the constitutional violations arising from the types of preventable deaths described above.

34. As an actual and proximate result of the Defendants' tortious acts and omissions, as alleged herein, Mark died, suffering damages prior to his death, including those arising from his pre-death pain and suffering, in an amount to be proved at trial. Further, Ms. Clines and K.A. each suffered damages arising from Mark's wrongful death and the deprivation of their respective parent-child relationships with Mark.

## V.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Negligence**

**(By Mark's Successor in Interest Against All Defendants)**

35. All prior paragraphs are incorporated herein by this reference.

36. K.C.A. asserts this cause of action as Mark's successor in interest.

37. From March through June 2020, Defendants had a duty to act with reasonable care and prudence in jailing individuals, both with regard to inmates suffering from serious and obvious medical conditions in need of immediate medical care, with regard to communicating inmates' critical medical information among jail staff, with regard to conducting adequate cell and welfare checks of inmates in Defendants' care and custody, and with regard to adequately investigating inmate injuries and deaths and communicating

the findings of these investigations to jail staff.

38. Defendants breached their duty of care by improperly, negligently, wrongfully, and recklessly failing to address Mark's serious and obvious medical conditions, risks, and needs in need of immediate medical care.

39. Defendants failed to sufficiently document Marks's condition and communicate his condition among themselves and medical providers.

40. Defendants failed to summon and provide medical care needed to address Mark's serious and obvious medical conditions, risks, and needs.

41. Defendants failed to conduct adequate cell and welfare checks of Mark.

42. Defendants failed to implement and consistently enforce policies regarding proper screening, evaluation, treatment, and observation of inmates suffering from serious medical conditions.

43. Defendants allowed their staff to violate rules and regulations with regard to conducting proper cell and welfare checks, whereby staff were failing to conduct proper cell checks even when an inmate had known, serious, and obvious medical conditions, risks, and needs.

44. Defendants failed to train their subordinates on how to handle encounters with persons who have known, serious, and obvious medical conditions, risks, and needs.

45. By engaging in the act alleged herein, Defendants failed to act with ordinary care and breached their duties of care owed to Mark.

46. Defendants' negligence was a substantial factor in Mark's death, resulting in damages, in an amount according to proof.

47. Because Does 1-50 acted in the course and scope of their employment as County employees, the County is vicariously liable for the harm proximately caused by their conduct pursuant to California Government Code section 815.2.

## SECOND CAUSE OF ACTION

### Cal. Civ. Code § 52.1 – Bane Act

**(By Mark's Successor in Interest Against All Defendants)**

48. All prior paragraphs, except those falling under Plaintiff's First Cause of Action, are incorporated herein by this reference.

49. K.C.A. asserts this cause of action as Mark's successor in interest.

50. Defendants, through coercive confinement, intended to violate (i.e., were deliberately indifferent to and/or recklessly disregarded) Mark's Eighth Amendment right to be free from deliberate indifference to his serious medical risks and needs. *See Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 802 n.31 (2017) ("depending on the right alleged to have been interfered with, physical force is not required at all," including "deliberate indifference to prisoner's medical need").

51. Defendants' deprivation of Mark's Eighth Amendment rights was a substantial factor in Mark's death, resulting in damages, in an amount according to proof.

52. Plaintiff is entitled to statutory damages, including three times the actual amount of Mark's damages, with a minimum of $4,000, pursuant to Civil Code section 52(a).

53. Because Does 1-50 acted in the course and scope of their employment as County employees, the County is vicariously liable for the harm proximately caused by their conduct pursuant to California Government Code section 815.2.

## THIRD CAUSE OF ACTION

**42 U.S.C. § 1983 – Deliberate Indifference to Serious Medical Needs**

**(By Mark's Successor in Interest Against Does 1-50)**

54. All prior paragraphs are incorporated herein by this reference.

55. K.C.A. asserts this cause of action as Mark's successor in interest.

56. From the end of March 2020 through July 7, 2020, Mark was a prisoner in Defendants' custody.

57. At all times relevant to this cause of action, Defendants were acting under color of state law.

58. Toward the end of June 2020, Defendants subjectively knew that Mark faced serious medical risks and had serious medical needs, including respiratory distress caused

by COVID-19.

59. Despite this knowledge, Defendants were deliberately indifferent to, and/or recklessly disregarded, Mark's serious medical risks and needs by, among other things, failing to provide Mark with sufficient medical care to address his respiratory distress.

60. By being deliberately indifferent to Mark's serious medical risks and needs, Defendants violated Mark's Eighth Amendment right to be free from such deliberate indifference as a prisoner.

61. As an actual and proximate cause of Defendants' deliberate indifference to Mark's serious medical risks and needs, Mark died, suffering damages prior to his death, including those arising from his pre-death pain and suffering, in an amount to be proved at trial.

62. Moreover, because Defendants acted (or failed to act) in deliberate indifference to, and/or reckless disregard of, Mark's constitutionally protected rights, Plaintiff seeks an award of exemplary damages against the culpable individual defendants in an amount sufficient to punish this conduct and to deter such conduct in the future.

## FOURTH CAUSE OF ACTION

### 42 U.S.C. § 1983 – Violation of Substantive Due Process

### (By Ms. Clines and K.C.A. Against Does 1-50)

63. All prior paragraphs are incorporated herein by this reference.

64. Toward the end of June 2020, Defendants subjectively knew that Mark faced serious medical risks and had serious medical needs, including respiratory distress caused by COVID-19.

65. Despite this knowledge, Defendants were deliberately indifferent to, and/or recklessly disregarded, Mark's serious medical risks and needs by, among other things, failing to provide Mark with sufficient medical care to address his respiratory distress. This was conscious-chocking conduct resulting in Mark's death.

66. As an actual and proximate result of Mark's death, K.C.A. and Ms. Clines were deprived of their Fourteenth Amendment right to enjoy the familial companionship

FIRST AMENDED COMPLAINT                                                              20cv2504

and society of their father and son, respectively.

67. As a direct and foreseeable result of this denial of substantive due process, Plaintiffs suffered economic and non-economic damages, in an amount to be determined at trial, including loss of future financial support and gifts, funeral expenses, and loss of love, companionship, comfort, care, assistance, protection, affection, society, and moral support.

68. Defendants, moreover, acted (or failed to act) in deliberate and/or reckless disregard of Plaintiffs' constitutionally protected rights. Plaintiffs thus seek an award of exemplary damages against these defendants in an amount sufficient to punish this conduct and to deter such conduct in the future.

## FIFTH CAUSE OF ACTION

### 42 U.S.C. § 1983 – *Monell* Liability

### [By Mark's Successor in Interest, K.C.A., and Ms. Clines Against County]

69. All prior paragraphs are incorporated herein by this reference.

70. K.C.A. asserts this cause of action as Mark's personal representative. K.C.A. and Ms. Clines also assert this claim individually.

71. Mark's Eighth Amendment rights were violated as set forth in Plaintiffs' Third Cause of Action.

72. Mark's Eighth Amendment rights were violated as an actual and proximate result of the County's: (a) deliberate indifference to the training needs of jail staff, including corrections and medical staff and (b) *de facto* customs, practices, and polices of (i) failing to sufficiently address the realities of COVID-19; (ii) failing to implement the recommendations of oversight organizations (like NCCHC) to bring County healthcare systems up to minimum standards; (iii) failing to coordinate and share critical medical information among jail staff, including a failure to update information-sharing infrastructure (like JIMS); (iv) failing to conduct proper cell checks; and (v) failing to investigate misconduct, take appropriate remedial action, and covering up wrongdoing.

73. By June 2020 when Mark contracted COVID, the County's final

policymakers were on notice of the countless deaths of, and injuries to, inmates from the denial of medical care in county jails. These individuals were also on notice of the serious medical risks and needs arising from COVID-19.

74. Leading up to Mark's death, the County's final policymakers failed to provide adequate training necessary for deputies and medical staff perform their duties without violating the constitutional rights of inmates and others, including a systemic failure to adequately address inmates' serious medical risks and needs.

75. By June 2020, the County's final policymakers were well aware that jail staff were not properly documenting important health information of inmates, and that jail staff thus needed training or re-training

76. The County's final policymakers were well aware there was a widespread pattern and long history of failure to communicate inmates' critical medical history to other staff.

77. Even after these final policymakers were provided with official reports from multiple organizations notifying them of these deficiencies and poor training, they failed to adequately train jail staff to address the problems noted by these reviewing organizations.

78. By June 2020, the County's final policymakers also knew jail staff were conducting cell and welfare checks in a way that resulted in unnecessary harm and/or death to detainees. These policymakers knew jail staff had lied in the past about conducting proper cell checks. These final policymakers also knew jail staff had complained they had insufficient time to conduct proper cell checks.

79. By June 2020, the County also failed to implement strategies needed to address COVID-19 in County jails.

80. As an actual and proximate cause of the County's deliberate indifference to the training needs of its jail staff, and to the *de facto* customs, practices, and policies resulting in constitutional violations alleged herein, Mark died, suffering damages prior to his death, including those arising from his pre-death pain and suffering, in an amount

according to proof.

## SIXTH CAUSE OF ACTION

### Wrongful Death

### (By K.C.A. Against All Defendants)

81. All prior paragraphs are incorporated herein by this reference.

82. K.C.A. is Mark's surviving son. Mark had no other issue or a spouse.

83. As alleged herein, Mark died as a result of Defendants' tortious conduct, including Defendants' deliberate indifference to Mark's serious medical needs. Mark's death was, therefore, "wrongful" for purposes of a claim for damages under California Code of Civil Procedure section 377.60. *See, e.g.*, *Estate of Prasad v. County of Sutter*, 958 F. Supp. 2d 1101, 1118 (E.D. Cal. 2013).

84. As a direct and foreseeable result of Mark's wrongful death, K.C.A. suffered economic and non-economic damages, in an amount to be determined according to proof, including loss of financial support and gifts, love, companionship, comfort, care, assistance, protection, affection, society, and moral support.

## VI.

## PRAYER FOR RELIEF

85. Pursuant to the foregoing causes of action, Plaintiffs pray for the following relief:

   a. on all causes of action, that judgment be rendered in favor of Plaintiffs and against Defendants;

   b. on all causes of action, that compensatory damages (including economic and noneconomic damages) be awarded as permitted by federal and state law, in amounts to be determined at trial;

   c. on the Second Cause of Action, that treble damages be awarded, with a minimum of $4,000;

   d. on the Third and Fourth Causes of Action, that punitive damages be awarded against the individual defendants, as permitted by federal law,

and in an amount sufficient to deter and make examples out of these individuals, to be determined at trial;

e. reasonable attorney fees, expenses, and costs of suit pursuant to 42 U.S.C. § 1988, California Civil Code section 52.1, California Code of Civil Procedure section 1021.5, and any other relevant statutory or case law; and

f. any and all other relief in law or equity to which Plaintiffs may be entitled and which this Court deems just and proper.

## VII.
## DEMAND FOR JURY TRIAL

86. Plaintiffs hereby demand a trial by jury of all issues and causes of action arising under law or that are otherwise triable by a jury.

Dated: January 20, 2021  SINGLETON SCHREIBER McKENZIE & SCOTT, LLP

By:  /s/Trenton G. Lamere

Attorneys for Plaintiff