UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.C.A., (by and through his guardian Amanda Purvis), individually, and as successor in interest to his father, Mark Armendo, deceased; PATRICE CLINES, individually,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO and DOES 1-50,<br><br>　　　　　　　　　　　Defendants. | Case No.: 20-CV-2504 W (BLM)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS [DOC. 10]** |

　　Defendant County of San Diego (the "County") moves to dismiss the First Amended Complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6) and strike immaterial portions under Rule 12(f).  Plaintiffs K.C.A. and Patrice Clines ("Ms. Clines") oppose.

　　The Court decides the matter on the papers submitted and without oral argument. See Civ. L.R. 7.1(d)(1).  For the reasons stated below, the Court **DENIES** the motion to dismiss [Doc. 10].

### I. BACKGROUND[1]

Plaintiffs seek to recover against the County in connection with the death of Mark Armendo ("Decedent") while he was a prisoner in the County's custody. K.C.A., a minor, is Decedent's only surviving child and suing through his mother and guardian, Amanda Purvis. (*FAC* ¶ 4.) In addition to suing individually, K.C.A sues as Decedent's successor in interest to pursue claims that survived Decedent's death. (*Id.*) Ms. Clines is Decedent's mother and is suing individually. (*Id.* ¶ 5.)

In June 2020, Decedent was a prisoner in the County's custody in the Vista jail. (*Id.* ¶ 11.) At that time, Decedent began experiencing serious medical conditions including respiratory distress substantially caused by a disease believed to be COVID-19. (*Id.* ¶ 12.) Plaintiffs allege unknown jail officials were aware of Decedent's deteriorating condition but failed to summon or provide the necessary care. (*Id.* ¶ 13.) Decedent ultimately stopped breathing and "was down in his jail cell for a significant period of time when discovered by jail staff." (*Id.* ¶ 14.) On June 29, 2020, Decedent was taken to the hospital where he tested positive for COVID-19. (*Id.* ¶ 14.) On July 7, 2020, the County released Decedent from custody. (*Id.*)

On August 21, 2020, Decedent died. (*Id.*) Plaintiffs' allege Decedent suffered from severe pneumonia and seizures because he had been allowed to drastically decompensate. (*Id.*)

Plaintiffs allege the County "failed to implement the safeguards and protocols needed to mitigate" the medical risks posed by COVID-19. (*Id.* ¶ 16.) Specifically, Plaintiffs allege the County failed to:

> a. Implement widespread testing to determine which staff and inmates were sick and/or contagious; b. Ensure sufficient stocks of hygiene supplies, cleaning supplies, personal protective equipment, and medical supplies were available; c. Implement consistent cleaning and sanitization procedures; d. Implement consistent adequate quarantine and/or medical isolation

---

[1] The following allegations are taken from the FAC (*FAC* [Doc. 5]).

procedures for inmates who have been exposed to and/or tested positive for COVID-19; e. Ensure adequate social distancing measures were possible and enforced; f. Refuse to book individuals for low-level, non-violent offenses; g. Summon/provide medical care capable of addressing COVID-19 and/or transfer inmates to facilities equipped to do so; and h. Consistently enforce the above strategies and others outlined by the U.S. Center for Disease Control and Prevention for correctional and detention facilities.

(*Id.* ¶ 16.)

Plaintiffs allege Decedent's death was substantially contributed to by the County's failure to implement recommendations made by the National Commission on Correctional Health Care ("NCCHC") in 2017.  These failures included: timely review of inmate deaths; formal peer-review process of deaths by contract medical providers; tracking medical grievances; tracking correctional officer training; documenting and enrolling inmates with chronic diseases in specific programs; and providing "suitable space, supplies, and equipment" for "medical, dental, and mental-health services." (*Id.* ¶¶ 25-29.)  Plaintiffs also contend the County was aware of prior examples of preventable inmate deaths due to failures to conduct cell checks, investigate misconduct, and take appropriate remedial actions.  (*Id.* ¶¶ 31-32.)

On November 20, 2020, Ms. Clines filed suit in the Superior Court of California, County of San Diego.  [Doc. 1-2.]

On November 23, 2020, the County removed the case to this Court based on Federal Question jurisdiction.  [Doc. 1.]

On November 30, 2020, the County filed a Motion to Dismiss and Strike.  [Doc. 3.]

On January 20, 2021, Plaintiffs filed the FAC.  (*FAC* [Doc. 5].)  Plaintiffs bring claims for negligence, deliberate indifference to serious medical needs, wrongful death, and for violations of the Bane Act, 42 U.S.C section 1983 (*Monell*), and substantive due process.

On February 3, 2021, the County renewed its Motion to Dismiss all Plaintiffs' claims.  [Doc. 10.]

## II. LEGAL STANDARD

### A. MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. Balisteri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). In ruling on the motion, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." Vasquez v. L.A. Cnty., 487 F.3d 1246, 1249 (9th Cir. 2007). But a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. Papasan v. Allain, 478 U.S. 265, 286 (1986); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

Complaints must contain "a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to rise above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 555 (2007). The allegations in the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570).

## III. DISCUSSION

### A. K.C.A. STANDING

Numerous claims in the FAC are alleged by K.C.A. on behalf of Decedent for violations of Decedent's personal rights. The County contends K.C.A. has not satisfied

the requirements to assert claims on behalf of Decedent's estate.  (*P&A* [Doc. 10-1] 6:19–25.)[2]

"A cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest." Cal. Civ. Proc. Code § 377.30.  In order to bring a cause of action as the decedent's successor in interest, a plaintiff shall execute and file an affidavit under penalty of perjury stating:

> (1) The decedent's name.
> (2) The date and place of the decedent's death.
> (3) "No proceeding is now pending in California for administration of the decedent's estate."
> (4) If the decedent's estate was administered, a copy of the final order showing the distribution of the decedent's cause of action to the successor in interest.
> (5) Either of the following, as appropriate, with facts in support thereof:
>    (A) "The affiant or declarant is the decedent's successor in interest (as defined in Section 377.11 of the California Code of Civil Procedure) and succeeds to the decedent's interest in the action or proceeding."
>    (B) "The affiant or declarant is authorized to act on behalf of the decedent's successor in interest (as defined in Section 377.11 of the California Code of Civil Procedure) with respect to the decedent's interest in the action or proceeding."
> (6) "No other person has a superior right to commence the action or proceeding or to be substituted for the decedent in the pending action or proceeding."
> (7) "The affiant or declarant affirms or declares under penalty of perjury under the laws of the State of California that the foregoing is true and correct."

Cal. Civ. Proc. Code § 377.32(a).

---

[2] The County also argues K.C.A. failed to properly appoint a guardian ad litem.  In its Reply, however, the County concedes that K.C.A. does not need to petition the Court in order for K.C.A.'s mother to act as "guardian" in federal court, as opposed to a "guardian ad litem." (*Reply* [Doc. 15] 3:6–10.)

K.C.A. has filed a declaration satisfying the requirements of California Code of Civil Procedure section 377.30.  (*See K.C.A. Decl.* [Doc. 14.].)  As such, K.C.A. has standing to assert claims on behalf of Decedent as "successor in interest."

### B.   NEGLIGENCE

Plaintiffs allege that unidentified defendants breached their duty of care to Decedent by failing to summon and provide necessary medical care to treat Decedent's serious and obvious medical condition.  The County argues it is immune to such a negligence claim and that the unidentified defendants did not owe a duty to Decedent under California law.  (*P&A* 9:5–7.)

Generally, a public entity is not liable for injury "proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in [the employee's] custody."  Cal. Gov't Code § 845.6.  However, a public entity can be vicariously liable for the acts of its employees if "the employee knows or has reason to know that the prisoner is in need of immediate medical care and [the employee] fails to take reasonable action to summon such medical care."  Id.

Here, Plaintiffs allege the County and its jail staff were on notice of the dangers of COVID-19 when, "[i]in or around the end of June 2020, [Decedent] began experiencing serious and obvious medical conditions requiring immediate care, including respiratory distress substantially caused by a disease believed . . . to be COVID-19."  (*FAC* ¶¶ 12, 17-23.)  Plaintiffs allege the unknown jail officials were aware of Decedent's serious and obvious medical condition, but failed to summon and provide the necessary medical care.  (*Id.* ¶ 13.)  As a result, "[Decedent] stopped breathing, and he was down in his jail cell for a significant period of time." (*Id.* ¶ 14.)  "Because he had been allowed to decompensate so severely, [Decedent] suffered from severe pneumonia and seizures" and died on August 21, 2020.  (*Id.*)

Plaintiffs allege Decedent was seriously ill well before the time jail staff summoned medical care for him and that he died as a result. Taken as true, the County may be held vicariously liable for its jail staff's negligence under such facts.

### C. DELIBERATE INDIFFERENCE

Plaintiffs allege that Defendants knew of and disregarded an excessive risk to Decedent's health and safety.  The County argues Plaintiffs have not alleged sufficiently particularized facts that jail staff had subjective knowledge that Decedent needed medical care and acted with deliberate indifference to that need.  (*Reply* [Doc. 15] 5:4–7.)

A prison official's "deliberate indifference to a prisoner's serious illness or injury" violates the Eighth Amendment.  Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002) (quoting Estelle v. Gamble, 429 U.S. 97, 105 (1976)).  "The inmates must demonstrate that they were confined under conditions posing a risk of objectively, sufficiently serious harm and that the officials had a sufficiently culpable state of mind in denying the proper medical care." Clement, 298 F.3d at 904 (internal quotations omitted).  A serious medical need exists when the failure to treat a prisoner "could result in further significant injury or the unnecessary and wanton infliction of pain."  Id. (internal quotations omitted).  Deliberate Indifference is evidenced when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 835 (1994).

As described above, Plaintiffs have alleged Decedent had COVID-19 and serious complications, including pneumonia and seizure due to lack of oxygen, which had been allowed to progress so severely that there was little chance of saving Decedent's life. Plaintiffs allege Decedent's medical condition was so serious it must have been obvious to jail staff.  (*Id*. ¶ 13.)  Drawing all reasonable inferences in Plaintiffs' favor, it is likely that jail staff knew Decedent was very ill and should have been hospitalized days earlier.

As such, Plaintiffs have stated a plausible claim for deliberate indifference to Decedent's serious medical needs under the Eighth Amendment.

### D.  WRONGFUL DEATH

The County's arguments for dismissal of the wrongful death claim come in two sentences in its Reply.  It states, "Plaintiffs' wrongful death claim should be dismissed because they have not alleged sufficient facts supporting liability under either [a Gov't Code 845.6 or an Eighth Amendment deliberate indifference] claim." (*Reply* 5:22–25.) Plaintiffs have stated facts sufficient to overcome both the underlying claims.  The County's motion to dismiss the wrongful death claim is denied.

### E.  BANE ACT VIOLATION

The County challenges the Bane Act claim, arguing that it is devoid of facts showing intentional interference with Decedent's rights by threats, intimidation or coercion.  (*P&A* 11:6–9.)

Section 52.1 "provides a cause of action for violations of a plaintiff's state or federal civil rights committed by 'threats, intimidation, or coercion.'" Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1105 (9th Cir. 2014) (quoting Cal. Civ. Code § 52.1). The Bane Act does not require the "threat, intimidation or coercion" element of the claim to be transactionally independent from the constitutional violation alleged.  Cornell v. City & Cty. of San Francisco, 17 Cal. App. 5th 766, 799 (2017), as modified (Nov. 17, 2017).  However, it does require a specific intent to deprive the victim of enjoying the interests protected by the violated right.  Id. at 803.

Here, Plaintiffs have pled facts alleging Defendants' interfered with Decedent's Eighth Amendment rights by unnecessarily holding him in custody despite his obvious need for medical care.  (*FAC* ¶ 14.)  Plaintiffs further allege the currently unknown jail staff were deliberately indifferent to Decedent's serious medical needs.  (*Id.* ¶ 13.) Plaintiffs have thus pled facts sufficient to state a Bane Act Claim.  See M.H. v. Cty. of

Alameda, 90 F. Supp. 3d 889, 899 (N.D. Cal. 2013) (denying a motion to dismiss because "a prisoner who successfully proves that prison officials acted or failed to act with deliberate indifference to his medical needs in violation of his constitutional rights . . . adequately states a claim for relief under the Bane Act").

In its Reply, the County argues the Bane Act claim should be dismissed against the County individually because the County is immune under California Government Code section 844.6.  Section 844.6 provides that "a public entity is not liable for . . . [a]n injury to any prisoner."  However, as discussed above, section 845.6 provides an exception to this broad limitation of liability when an employee knows or has reason to know that a prisoner "is in need of immediate medical care and [the employee] fails to take reasonable action to summon such medical care."  Cal. Gov't Code § 845.6.  As section 845.6 appears to provide an exception to this immunity, and because Plaintiffs have not had the opportunity to address the issue, the Court declines to dismiss the County at this stage.  See Greer v. Cty. of San Diego, 2021 WL 615046, at *9 n.3 (S.D. Cal. Feb. 17, 2021).

### F. SUBSTANTIVE DUE PROCESS VIOLATION

Plaintiffs contend that the deliberate indifference to Decedent's serious medical risks and needs violated their substantive due process rights, for deprivation of familial relations, under the Fourteenth Amendment.  The County argues Plaintiffs' "vague and general allegations regarding cell checks and policies failing to meet NCCHC proposed standards does not amount to a constitutional violation, yet alone actions that shock the conscience." (*P&A* 14:14–16.)

Plaintiffs must show that an officer's conduct "shocks the conscience" to prevail on a substantive due process claim under the Fourteenth Amendment.  See Wilkinson v. Torres, 610 F.3d 546, 554 (9th Cir. 2010).  The "critical consideration [is] whether the circumstances are such that actual deliberation is practical."  Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir. 2008).  "If so, an officer's 'deliberate indifference' may suffice to

shock the conscience and the plaintiff may prevail by showing that the officer disregarded a known or obvious consequence of his action." Nicholson v. City of Los Angeles, 935 F.3d 685, 692–93 (9th Cir. 2019) (internal citations and quotations omitted).

Viewing the totality of evidence in the light most favorable to Plaintiffs, the failure to provide sufficient medical care violated Plaintiffs' due process rights. Plaintiffs allege Decedent's medical needs were obvious such that "Defendants subjectively knew that [Decedent] faced serious medical risk and had serious medical needs, including respiratory distress caused by COVID-19." (*FAC* ¶ 64.) Despite this knowledge, Plaintiffs contend, "Defendants were deliberately indifferent to, and/or recklessly disregarded, [Decedent's] serious medical risks and needs by, among other things, failing to provide [Decedent] with sufficient medical care to address his respiratory distress." (*Id.* ¶ 65.) Under Plaintiffs' version of the facts, a rational finder of fact could find that this was conscious-shocking conduct resulting in Decedent's death. The County's motion to dismiss this claim is denied.

### G. *Monell* Claim

Defendants seek to dismiss Plaintiffs' *Monell* cause of action against the County, arguing that "Plaintiffs fail to allege facts showing that the alleged [policy and custom] deficiencies caused Decedent's death." (*P&A* 18:19–20.) The Court disagrees.

"A municipality may not be held liable under [42 U.S.C. section 1983] solely because it employs a tortfeasor." Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 403 (1997) (referencing Monell, 436 U.S. at 689–92). Instead, a plaintiff seeking to establish municipal liability under section 1983 must prove that his or her injury was the result of a municipal policy or custom. Id. "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Id. at 403–04.

However, a "local governmental body may be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights." Oviatt By and Through Waugh v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992) (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)). In order to establish a section 1983 claim against a local government entity for failing to act to preserve a constitutional right, the plaintiff must establish: (1) a county employee violated plaintiff's constitutional right; (2) the municipality had a policy or custom that amounts to deliberate indifference; and (3) the custom or policy is the moving force behind the constitutional violation. Long v. County of Los Angeles, 442 F.3d 1178, 1186 (9th Cir.2006) (citing Gibson v. County of Washoe, 290 F.3d 1175, 1193-94 (9th Cir. 2002)). In the context of a failure to train claim, deliberate indifference can be proven "without showing a pattern of constitutional violations where 'a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." Id. (quoting Board of County Commissioners v. Brown, 520 U.S. 397, 409 (1997)).

Here, Plaintiffs allege the violation of Decedent's right to adequate medical care was caused by the County's:

> (a) deliberate indifference to the training needs of jail staff, including corrections and medical staff; and
> (b) *de facto* customs, practices, and polices of:
> > (i) failing to sufficiently address the realities of COVID-19;
> > (ii) failing to implement the recommendations of oversight organizations (like NCCHC) to bring County healthcare systems up to minimum standards;
> > (iii) failing to coordinate and share critical medical information among jail staff, including a failure to update information-sharing infrastructure (like JIMS);
> > (iv) failing to conduct proper cell checks; and
> > (v) failing to investigate misconduct, [failing to] take appropriate remedial action, and covering up wrongdoing.

(*FAC* ¶ 72.) The FAC alleges that, by the time Decedent became ill, the County was on notice of serious medical risks arising from COVID-19 and knew its inmates were being

routinely deprived of necessary medical rights because of systemic failure in County jails. (*Id.* ¶¶ 73-78.) Drawing all reasonable inferences in Plaintiffs' favor, it is plausible that the foregoing systemic failures were a substantial cause of Decedent's death.

The County also contends that, while Decedent's estate can recover under *Monell*, Plaintiffs may not maintain such a claim individually. (*P&A* 20:4–10.) Specifically, the County argues that the Decedent's Eighth Amendment claim is personal and only his survivor can maintain a claim as the representative of his estate. However, Plaintiffs also have individual Fourteenth Amendment rights which would not have been violated had Decedent not died. The County can be held liable under *Monell* for a violation of the Fourteenth Amendment right to substantive due process. See Shelley v. Cty. of San Joaquin, 996 F. Supp. 2d 921, 932 (E.D. Cal. 2014) (denying a motion to dismiss a *Monell* claim for violation of the individual plaintiffs' substantive due process rights as the family members of the decedent).

The County's motion to dismiss the *Monell* claim is denied.

### H.  REQUEST TO STRIKE ALLEGATIONS

The County argues allegations in the FAC regarding the NCCHC's report on medical services provided, as well as Union Tribune articles referencing the County's response to COVID-19 in County jails, should be stricken because they are "immaterial, impertinent, and scandalous." (*P&A* 18:27–19:19.)

Rule 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010) (quotation omitted). Motions to strike are generally disfavored and are "usually . . . denied unless the allegations in the pleading have no possible relation to the controversy, and may

cause prejudice to one of the parties." See Travelers Cas. & Sur. Co. of Am. v. Dunmore, 2010 WL 5200940, at *3 (E.D. Cal. 2010).

Redundant matter is the needless repetition of assertions. See Travelers, 2010 WL 5200940, at *3. "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being plead." Whittlestone, 618 F.3d at 974 (quotation omitted). "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." Id. (quotation omitted). "Scandalous matters are allegations 'that unnecessarily reflect . . . on the moral character of an individual or state . . . anything in repulsive language that detracts from the dignity of the court' . . . and 'include . . . allegations that cast a cruelly derogatory light on a party or other person.'" Consumer Solutions REO, LLC v. Hillery, 658 F. Supp. 2d 1002, 1020 (N.D. Cal. 2009) (quoting Cobell v. Norton, 224 F.R.D. 1, 5 (D.D.C. 2004), In re 2TheMart.com Secs. Litig., 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000), respectively). The court may not strike from the pleadings any disputed and substantial factual or legal issue. See Whittlestone, 618 F.3d at 973–74 (9th Cir. 2010). Any doubt about whether the matter under attack raises a factual or legal issue should be resolved in favor of the non-moving party. See id. at 975 n.2.

The County argues allegations regarding general medical care in the jails and Union Tribune articles are impertinent and immaterial because they have no direct causal relationship to the claims and defenses involved in this case. The Court disagrees. Allegations regarding NCCHS's report card for the County, as well as references to reporting by the Union Tribune, provide useful background for Plaintiffs' claims. More importantly, Plaintiffs' *Monell* claim depends on proof that the County was on notice of serious medical risks arising from COVID-19 and knew its inmates were being routinely deprived of necessary medical rights because of systemic failure in County jails. (*FAC* ¶¶ 73–78.) The subject allegations are directly relevant to Plaintiffs' *Monell* claim and the County will not be prejudiced by them. The request to strike these allegations is denied.

13

20-CV-2504 W (BLM)

## IV. CONCLUSION & ORDER

For the foregoing reasons, the Court **DENIES** the motion to dismiss [Doc. 10].

**IT IS SO ORDERED**.

Dated: August 3, 2021

Hon. Thomas J. Whelan
United States District Judge