UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICE CLINES AND K. C. A., by and through his guardian, Amada Purvis, individually, and as a successor in interest to his father, Mark Armendo, deceased,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO,<br><br>Defendant. | Case No.:  20cv2504-W(BLM)<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING PETITION FOR APPROVAL OF MINOR'S COMPROMISE AND FINDING THE PROPOSED SETTLEMENT FAIR AND REASONABLE**<br><br>**[ECF No. 48]** |

Currently before the Court is Plaintiffs' June 3, 2022, Petition for Approval of Minor's Compromise and October 28, 2022, Supplemental Declaration In Support of Petition for Approval of Minor's Compromise. ECF Nos. 48 and 55. This Report and Recommendation is submitted to United States District Judge Thomas J. Whelan pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 17.1 of the United States District Court for the Southern District of California. After reviewing the Petition and all supporting documents, and for the reasons discussed below, the Court **RECOMMENDS** that District Judge Whelan **GRANT** the Petition as set forth below.

## BACKGROUND

The above entitled matter was removed to this Court on December 23, 2020. ECF No. 1. On January 20, 2021, Plaintiffs Patrice Clines and K.C.A., by and through his mother and

guardian ad litem ("GAL"), Amanda Purvis, filed a First Amended Complaint ("FAC") arising out the alleged wrongful death of K.C.A.'s father and Ms. Clines' son, Mark Armendo, who was a prisoner in the custody of the County of San Diego at the time of his death.  ECF No. 5. Defendant answered the complaint on August 17, 2021.  ECF No. 18.

On February 24, 2022, Plaintiffs filed a Second Amended Complaint ("SAC").  ECF No. 39. Defendants filed a Motion to Dismiss the SAC on March 10, 2022 which is currently pending. ECF No. 41.

On June 3, 2022, Plaintiffs filed a Petition for Approval of Minor's Compromise.  ECF No. 48.  That same day, Defendant filed a response to Petition for Approval of Minor's Compromise. ECF No. 50.  Defendant's response asked the Court to "continue the hearing on the Petition for Approval of Minor's Compromise [] until the amount of the medical lien is determined" and noted that if "the medical lien can be satisfied through the settlement proceeds, the County of San Diego will not oppose the Petition."  Id.  On June 7, 2022, the Court ordered that "[o]nce the amount of the medical lien is determined, the parties must file a joint motion setting forth the amount of the lien and the updated position of each party as to the minor's compromise."  ECF No. 51 at 2.

On September 20, 2022, the parties filed a Joint Motion Re Petition for Approval of Minor's Compromise.  ECF No. 52.  The parties informed that Court that the

> final amount of the medical lien at issue is $13,698.56. After fees and costs previously provided with Plaintiffs' Petition are deducted, Plaintiffs will each net $6,849.72. Plaintiffs submit that, given the reasons previously provided in Plaintiffs' Petition, the proposed compromise and distribution of settlement proceeds (i.e., deposit of the minor's net proceeds into a college savings account) remain fair and reasonable to the minor.

and "jointly request[ed] that the Court 'reset the hearing and allow all parties and counsel to appear at the hearing remotely via ZoomGov.'"  Id. at 1-2 (quoting ECF No. 51 at 3).

On October 21, 2022, the Court held a video conference hearing on the Petition.  ECF No. 54.  Appearing for Plaintiffs was Trenton G. Lamere, Plaintiff Patrice Clines, and GAL, Amanda Purvis.  Id.  Attorney Melissa Maria Holmes appeared on behalf of Defendant.  Id.  No

one appeared to oppose the Petition or object to the settlement terms.  During the hearing, the Court expressed its concern that the amount of money being distributed to K.C.A. was too low in light of Robidoux v. Rosengren, 638 F.3d 1177, 1181 (9th Cir. 2011) and the amount of attorneys' fees deducted from K.C.A.'s share was too high in light of the relevant California statutes.  After the hearing, Plaintiffs submitted a Supplemental Declaration in Support of the Petition addressing the Court's concerns.  ECF No. 55.  The Court has considered the Petition, the Response, all of the argument and testimony provided during the hearing, and the Supplemental Declaration.  For the reasons set forth below, the Court **RECOMMENDS** that the Petition be **GRANTED**.

## LEGAL STANDARD

It is well settled that courts have a special duty to safeguard the interests of litigants who are minors in civil litigation.  Robidoux, 638 F.3d at 1181; see also Fed. R. Civ. P. 17(c) (district courts "must appoint a guardian *ad litem*—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action.").  "In the context of proposed settlements in suits involving minor plaintiffs, this special duty requires a district court to 'conduct its own inquiry to determine whether the settlement serves the best interests of the minor.'" Robidoux, 638 F.3d at 1181 (quoting Dacanay v. Mendoza, 573 F.2d 1075, 1080 (9th Cir. 1978)); see also Salmeron v. United States, 724 F.2d 1357, 1363 (9th Cir. 1983) (holding that "a court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian *ad litem*.").  To facilitate the Court in satisfying the duty to safeguard, Civil Local Rule 17.1(a) provides that "[n]o action by or on behalf of a minor or incompetent will be settled, compromised, voluntarily discontinued, dismissed or terminated without court order or judgment."  CivLR. 17.1(a).  This requires the Court to determine if the settlement is in the best interests of the minor and to consider not only the fairness of the amount of the settlement, but the structure and manner of distribution of the assets for the benefit of the minor.

The Ninth Circuit established that courts reviewing the settlement of a minor's federal

claim should "limit the scope of their review to the question whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." Robidoux, 638 F.3d at 1181–82. They should "evaluate the fairness of each minor plaintiff's net recovery without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel—whose interests the district court has no special duty to safeguard." Id. at 1182 (citing Dacanay, 573 F.2d at 1078). "So long as the net recovery to each minor plaintiff is fair and reasonable in light of their claims and average recovery in similar cases, the district court should approve the settlement as proposed by the parties." Robidoux, 638 F.3d at 1182.

The Ninth Circuit limited its decision in Robidoux to "cases involving the settlement of a minor's federal claims." Id. at 1181–82 (emphasis added). Where a settlement involves state law claims, federal courts are generally guided by state law rather than Robidoux. J.T. by & Through Wolfe v. Tehachapi Unified Sch. Dist., 2019 WL 954783, at *2 (E.D. Cal. Feb. 27, 2019). See also A.M.L. v. Cernaianu, 2014 WL 12588992, at *3 (C.D. Cal. Apr. 1, 2014) (collecting cases). The court in A.M.L. noted that, although federal courts generally require claims by minors to "be settled in accordance with applicable state law," the Ninth Circuit in Robidoux held such an approach "places undue emphasis on the amount of attorney's fees provided for in a settlement, instead of focusing on the net recovery of the minor plaintiffs." Id. at *2 (quoting Robidoux, 638 F.3d at 1181) (other citation omitted). But see Mitchell v. Riverstone Residential Grp., 2013 WL 1680641, at *1 (E.D. Cal. Apr. 17, 2013) ("[A] number of district courts have applied the rule provided in Robidoux to evaluate the propriety of a settlement of a minor's state law claims as well") (collecting cases).

The California Probate Code provides the applicable statutory scheme for approval of a minor's compromise under state law. See Cal. Prob. Code §§ 3601 et seq. Under California law, the Court is tasked with evaluating the reasonableness of the settlement and determining whether the compromise is in the best interest of the minor. A.M.L., 2014 WL 12588992, at *3 (citations omitted). The Court is afforded "broad power . . . to authorize payment from the settlement—to say who and what will be paid from the minor's money—as well as direct certain

individuals to pay it." Goldberg v. Superior Court, 23 Cal. App. 4th 1378, 1382 (Cal. Ct. App. 1994); see also Pearson v. Superior Court, 136 Cal. Rptr. 3d 455, 459 (Cal. Ct. App. 2012) (explaining that the purpose of requiring court approval of a minor's settlement is to "allow[] the guardians of a minor to effectively negotiate a settlement while at the same time protect[ing] the minor's interest by requiring court approval before the settlement can have a binding effect on the minor").

## DISCUSSION

### A.   Proposed Settlement

The proposed settlement of this case is $75,000 to be divided equally between Plaintiffs Patrice Clines (decedent's mother) and K.C.A. (decedent's child) after payment of attorneys' fees, decedent's medical liens, and all required fees and costs. ECF No. 48. In the initial application, Plaintiffs identified the following expenses to be deducted from the settlement amount: $30,000 in attorneys' fees (approximately 40% of the total settlement amount), $13,698.56 to cover decedent's medical liens, $16,425 in expert fees, and $1243.45 in other fees and expenses. Id. at ¶¶ 12-14, 48-1, Declaration of Trenton G. Lamere In Support of Petition for Approval of Minor's Compromise ("Lamere Decl.") at ¶¶ 10-11, and 52. Under this structure, Plaintiff K.C.A., would receive a net settlement of $6,849.72. In the supplemental declaration Plaintiffs' counsel justified their requested fees but also agreed to reduce their fees in an amount up to 25% of K.C.A.'s recovery, if the Court finds that is appropriate. ECF No. 55 at ¶¶ 16-21. In either situation, K.C.A.'s recovery will be deposited into K.C.A.'s existing 529 education savings account, an interest-bearing investment account. ECF No. 48 at ¶ 16; see also ECF No. 52.

In analyzing the pending application, the Court initially finds that $75,000 is a fair and reasonable settlement for the Plaintiffs. In reaching this conclusion, the Court relies on Plaintiffs' counsel's explanation that the original theory of liability, which had a significantly higher settlement value, turned out to be problematic and the case required extensive legal and expert work to develop and prove a second theory of liability. ECF No. 48 at ¶ 4. While the Court generally does not evaluate the total settlement figure as part of a minor's compromise, the

Court finds it appropriate to do so in this unusual case as it impacts the Court's analysis and conclusions. The Court also accepts the summary set forth in the Petition that Plaintiff K.C.A. is a ten year old boy whose father, Mark Armendo, died while in Defendant's custody. Plaintiff K.C.A.'s "primary injuries in this case are the non-economic damages [he] suffered as a result of Mr. Armendo's death, including loss of love, companionship, comfort, care, assistance, protection, affection, society, and moral support." ECF No. 48 at ¶ 5.

**B.     Attorney's Fees and Costs**

In addition to assessing whether the settlement is fair and reasonable, the Court must approve the attorneys' fees and costs to be paid for representation of a minor. See Cal. Prob. Code § 3601; Cal. Rule of Ct. 7.955.[1] In contingency fee cases, attorneys' fees for representing a minor historically have been limited to 25% of the gross recovery. See, e.g., DeRuyver v. Omni La Costa Resort & Spa, LLC, 2020 WL 563551, at *2 (S.D. Cal. Feb. 4, 2020); Mitchell v. Riverstone Residential Grp., 2013 WL 1680641, at *2 (E.D. Cal. Apr. 17, 2013); McCue v. South Fork Union Sch. Dist., 2012 WL 2995666, at *2 (E.D. Cal. Jul. 23, 2012); Welch v. Cty. Of Sacramento, 2008 WL 3285412, at *1 (E.D. Cal. Aug. 5, 2008); Red v. Merced Cty., 2008 WL 1849796, at *2 (E.D. Cal. Apr. 23, 2008). "[M]ost courts require[] a showing of good cause to award more than 25% of any recovery" and such an award is "rare and justified only when counsel proves that he or she provided extraordinary services." Schwall v. Meadow Wood Apts., 2008 WL 552432, at *1-*2 (E.D. Cal. Feb. 27, 2008) (internal quotation marks omitted). To determine whether a request for attorney's fee is reasonable, the Court may consider factors such as the time and labor required, whether the minor's representative consented to the fee, the amount of money involved, the result obtained, and whether the fee is fixed, hourly, or contingent. See California Rule of Court 7.955(b).

1.     Attorneys' Fees

Here, Plaintiffs' attorneys are seeking $30,000, which is forty percent of the gross

---

[1] Similarly, San Diego Superior Court Civil Rule 2.4.6.2 states that, regarding a minor's compromise, "the court will determine the amount of costs, expenses, and attorney's fees to be allowed from the proceeds of the settlement."

recovery and exceeds historical limits allowing twenty-five percent of the gross recovery for cases involving minors. Accordingly, Plaintiffs' counsel must provide good cause for their request. In support of the request, Plaintiffs' counsel states that they have spent more than 270 hours working on this matter and that the current hourly rate for each attorney is $500.  ECF No. 55 at ¶ ¶16-17.  Counsels' rate "reflects the contingency nature of fee agreements in most civil-rights cases" and "the skill and experience of Plaintiffs' counsel." Id. at ¶ 17.  Counsel notes that other courts have found similar rates reasonable for Plaintiffs' counsel in the past. Id. at ¶ 18.  Counsel argues that there is good cause for the higher than normal fee request because it "took considerable skill and effort" to successfully settle this case. Id. at ¶ 20.  Counsel explains that they had to conduct significant discovery to pursue the first theory of liability and then to establish the second theory of liability.  Id. at ¶ ¶ 5-10; see also ECF No. 48 at ¶ 4.  Plaintiffs' counsel notes that granting the request for $30,000 in fees works out to an hourly rate of around $135 (not considering administrative/paralegal hours).  Id. at ¶ 19.

Alternatively, Plaintiffs' counsel states that if the Court does not find good cause for the requested forty percent fees, "Petitioner does not object to reducing the fees on the minor's portion of the gross settlement to something less than forty percent, and greater than or equal to twenty-five percent." Id. at ¶ 21.  Plaintiffs' counsel notes, however, that if the Court were to award attorneys' fees of twenty-five percent, Plaintiffs' counsels' hourly rate would be reduced to $109 excluding administrative/paralegal hours.[2]  Id.

In reaching a decision on the attorneys' fees, the Court may consider factors such as the time and labor required, whether the minor's representative consented to the fee, the amount

---

[2] Reducing Plaintiffs' counsel's attorneys' fees to 25% would result in the following distribution of funds to Plaintiff K.C.A.

| Item | Amount |
|---|---|
| Half of Gross Settlement | $37,500.00 |
| Attorneys' Fees | ($9,375.00) |
| Half of Litigation Costs | ($8,834.22) |
| Half of Medi-Cal Lien | ($6,849.28) |
| Total to Minor: | $12,441.50 |

of money involved, the result obtained, and whether the fee is fixed, hourly, or contingent. See California Rule of Court 7.955(b). Here, the total settlement figure is $75,000 and Plaintiff K.C.A.'s GAL did sign an agreement consenting to the forty percent contingency fee. The Court relies on the information and explanation provided in the Supplemental Declaration and notes that counsel expended significant time and resources to obtain a favorable result for his clients in a difficult liability case. Accordingly, the Court awards Plaintiffs' counsel more than the standard twenty-five percent recovery and finds that a reasonable attorneys' fee award for counsels' services is $12,375.00, which is thirty-three percent (33%) of Plaintiff K.C.A.'s share of the gross settlement.

2. Expert Costs

Plaintiffs' counsel seeks to recover $16,425.00 for expert fees. ECF No. 48 at ¶ 12. Counsel explains that Petitioner has not paid for any of these expenses and that all of the "expenses were advanced by Plaintiff's counsel." Id. at ¶ 13. In the Supplemental Declaration, Plaintiffs' counsel states that it cost $15,425.00 to obtain an autopsy report from Dr. David M. Posey, MD, BCFE, BCFM, a board certified forensic pathologist. ECF No. 55 at ¶¶ 6-8. Plaintiffs' counsel explains that the County would not perform the autopsy and an autopsy was critical to Plaintiffs' first theory of the case that Mr. Armendo died from a preventable COVID-19 infection while in the county jail. Id. at ¶ 7. Counsel provided a complete and accurate copy of Dr. Posey's rates and the invoice describing Dr. Posey's charges which included conducting the autopsy, reviewing more than 5000 pages of medical records, and preparing a written report. Id. at Exhibits 2-3.

Plaintiffs' counsel states that the remaining $1000 in expert costs went to Michael S. Ritter, MD, an emergency-medicine expert. Id. at ¶ 10. Plaintiffs retained Dr. Ritter after Dr. Posey's work revealed that Mr. Armendo died from a fentanyl overdose, rather than COVID-19. Id. at ¶¶ 5-10; see also ECF No. 48 at ¶ 4. Dr. Ritter was retained to provide an opinion as to "whether the 2-3 minute delay in medical treatment (once he was discovered to be down in his cell) substantially contributed to Mr. Armendo's death." Id.

Given the unusual facts of this case, the Court finds that the expert fees while high in

relation to the settlement amount, were necessary for the successful resolution of the case and are fair and reasonable.

3. Medical Lien

Mr. Armando's medical bills through the date of his death totaled $192,856.45. Id. at ¶ 11. Plaintiffs' counsel successfully negotiated with Medi-Cal to reduce the lien to $13,698.56. Id. Counsel explains that the Plaintiffs have agreed to equally share the cost of the lien. Id. at ¶ 12. Given the negotiated lien amount and the Plaintiffs' willingness to equally share the expense, the Court finds the lien to be a reasonable cost.

4. Remaining Costs

The remaining costs at issue include $531.50 in Court filing fees, $184.04 in service of process fess, $499.67 in medical record fees, and $28.24 in shipping/postage costs. ECF No. 48 at ¶ 12. The Court finds theses costs to be fair and reasonable under the circumstances of this case.

5. Conclusion

After reviewing the various litigation costs, and considering the facts and issues in this case, the Court finds that the following fees and costs are fair and reasonable and result in a settlement that is in the best interests of K.C.A.

| Item | Amount |
|---|---|
| Half of Gross Settlement | $37,500.00 |
| Attorneys' Fees (33%) | ($12,375.00) |
| Half of Litigation Costs | ($8,212.50 expert fees) |
|  | ($621.72 litigation costs) |
| Half of Medi-Cal Lien | ($6,849.28) |
| Total to K.C.A.: | $9,441.50 |

**C.   Method of Disbursement**

Courts may use a wide variety of methods for the disbursement of settlement funds to a minor. See Cal. Prob. Code § 3600 et. seq. Here, Plaintiffs' GAL and counsel request that Plaintiff K.C.A's settlement funds be deposited into K.C.A.'s 529 education savings account which was opened when K.C.A. was born in 2011. ECF No. 48 at ¶ 16. It "is an interest bearing investment account, specifically designed to encourage the minor's higher education." Id. The Court finds

that this method of disbursement is fair, reasonable, and within the bounds of applicable law. See Cal. Prob. Code § 3611 ("In any case described in Section 3610, the court making the order or giving the judgment referred to in Section 3600 shall, upon application of counsel for the minor or person with a disability, order any one or more of the following . . . . [t]hat the remaining balance of any money paid or to be paid be deposited in an insured account in a financial institution in this state" [or] "[i]f the remaining balance of the money to be paid or delivered does not exceed twenty thousand dollars ($20,000), that all or any part of the money be held on any other conditions the court in its discretion determines to be in the best interest of the minor or person with a disability.").

## CONCLUSION

After conducting an independent inquiry and evaluation of the proposed settlement, the Court finds that the proposed settlement is fair, reasonable, and in the best interests of the minor Plaintiff, given the legal and factual issues involved in this case, and recoveries in similar cases. See Robidoux et al., 638 F.3d at 1181-82 (holding that district courts should limit the scope of their review of a compromise or settlement of a minor's claims "to the question whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases"). The Court also finds that the proposed expenses and attorneys' fees are fair and reasonable. Accordingly, the Court **RECOMMENDS** that Judge Whelan approve the proposed settlement, grant the petition for compromise of dispute claim of minor, and issue the following orders:

1. Within twenty-one days of Judge Whelan's order, Defendant must provide Plaintiff's counsel with a check in the amount of $75,000.00 made payable to Lamere Legal, 122 Mascoutah Avenue, Belleville, IL 62220.

2. Upon receipt of the $75,000.00, Plaintiff's counsel shall retain $27,375.00 for attorney's fees and use the remaining money to pay the hard costs incurred during the litigation, the remaining medical liens, and Plaintiff Ms. Clines.

3. Within thirty days of Judge Whelan's order, the minor's net settlement proceeds, $9,441.50, are to be deposited in K.C.A.'s 529 education savings account, which

is an interest-bearing, federally insured account;

4. A joint motion for dismissal of the instant case must be filed within five days after Plaintiffs' counsels' receipt of the settlement check.

**IT IS HEREBY ORDERED** that any objections to this Report and Recommendation must be filed with the Court and served on all parties no later than **November 25, 2022**. The document should be captioned "Objections to Report and Recommendation."[3]

**IT IS SO ORDERED**.

Dated: 11/10/2022

Hon. Barbara L. Major
United States Magistrate Judge

---

[3] Although the federal statutory scheme provides for a 14-day objections period to a Magistrate Judge's Report and Recommendation, the undersigned notes that the Petition in this case is unopposed. See ECF No. 50. Therefore, if all parties wish to waive the objections period, they should file a joint stipulation to that effect immediately, to allow the Court to adopt this Report and Recommendation without further delay. There will be no adverse consequences to any party who files objections or otherwise chooses not to waive the objection period.